**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS JEFFERSON UNIVERSITY d/b/a JEFFERSON HEALTH,<br>1101 Market Street<br>Philadelphia, PA 19107,<br><br>Plaintiff,<br><br>v.<br><br>KEYSTONE HEALTH PLAN EAST,<br>1901 Market Street, 28th Floor<br>Philadelphia, PA 19103,<br><br>QCC INSURANCE COMPANY,<br>1901 Market Street, 28th Floor<br>Philadelphia, PA 19103,<br><br>AMERIHEALTH HMO,<br>1901 Market Street, 28th Floor<br>Philadelphia, PA 19103,<br><br>Defendants. | Civil Action No. 2:26-CV-05883 |

**NOTICE OF REMOVAL**

**TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Pursuant to 28 U.S.C. §§ 1331, 1442, and 1446, Defendants Keystone Health Plan East, Inc. and QCC Insurance Company (collectively, the "MAO Defendants"), by and through their attorneys, file this Notice of Removal ("Notice") of this action from the Philadelphia Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania. For the reasons set forth below, removal is proper:

## I. BACKGROUND

1. On July 22, 2026, Plaintiff Thomas Jefferson University d/b/a Jefferson Health ("Jefferson") filed a Complaint and Jury Demand (the "Complaint") in the Philadelphia Court of Common Pleas, styled *Thomas Jefferson Univ. v. Keystone Health Plan East, QCC Insurance Co., and AmeriHealth HMO*, C.A. No. 260702609. A true and correct copy of the Complaint and the exhibits attached thereto is attached as Exhibit A.[1]

2. On July 28, 2026, the three defendants were each served with Jefferson's Complaint.

3. Plaintiff Jefferson is a university and healthcare system that operates hospitals and healthcare sites. Compl. ¶ 2.

4. Defendants Keystone Health Plan East, QCC Insurance Company, and AmeriHealth HMO (collectively, "Independence") are affiliate insurance companies and subsidiaries of Independence Blue Cross, LLC. *Id.* ¶ 3. According to Jefferson, the three defendants collectively operate as "Independence Blue Cross". *Id.*

5. Effective September 1, 2017, Jefferson and Independence entered into a Participating Hospital Agreement (the "Provider Agreement"), pursuant to which Jefferson provides medical services to Independence insurance plan members, and Independence reimburses Jefferson for those services. Compl. ¶ 8; Compl. Ex. 1. Jefferson and Independence amended the Provider Agreement effective January 1, 2023. Compl. ¶ 2; Compl. Ex. 2.

[1] Given confidentiality provisions in the Provider Agreement, Jefferson did not file Exhibit 1 (the Provider Agreement between Jefferson and Independence) and Exhibit 2 (the Amendment to the Provider Agreement) to the Complaint with the Philadelphia Court of Common Pleas. Independence will provide those exhibits to this Court under seal upon request.

6. The Provider Agreement covers Medicare Advantage plans offered by Independence and their affiliates, including MAO Defendants.[2] Under the Provider Agreement, Jefferson provides medical services to members of MAO Defendants' Medicare Advantage insurance plans, and MAO Defendants reimburse Jefferson for services for Medicare Advantage plan members. Compl. ¶¶ 45, 47, 56; Compl. Ex. 1 § 1.3, Ex. B (Benefit Programs).

7. Medicare Advantage plans are Medicare managed care plans offered by private MAOs like MAO Defendants to enrollees who elect Medicare Part C (i.e., Medicare Advantage) coverage. Compl. ¶ 45; 42 U.S.C. § 1395w-22. The Centers for Medicaid and Medicare Services ("CMS"), an agency within the U.S. Department of Health and Human Services, administers Medicare and sets the rules and regulations for Medicare Advantage plans. Compl. ¶ 44 n.2. The U.S. Department of Health and Human Services pays Independence for administering and offering Medicare Advantage plans. 42 U.S.C. § 1395w-23.

8. MAO Defendants are Medicare Advantage Organizations ("MAOs") that hold contracts with CMS. Compl. Ex. 1 at Ex. C ("[Jefferson] acknowledges that the Agreement covers Medicare Members covered under a Medicare agreement between CMS and Independence [Medicare Advantage plans] under the Medicare Advantage HMO and/or PPO Benefit Programs."); *see also* CMS, *MA Plan Directory* (July 2026), https://www.cms.gov/data-research/statistics-trends-and-reports/medicare-advantagepart-d-contract-and-enrollment-data/ma-plan-directory (identifying MAO Defendants as MAOs).

9. Under their contracts with CMS and at the direction of CMS, MAO Defendants operate under CMS as MAOs that provide health benefits under Medicare Part C Medicare

[2] Defendant AmeriHealth HMO will begin operating as an MAO effective January 1, 2027, pursuant to a contract with CMS.

Advantage plans to Medicare-eligible enrollees. MAO Defendants are required to comply with applicable federal Medicare law in administering its Medicare Advantage plans that are subject to the Provider Agreement. *See* 42 U.S.C. § 1395w-27(a) (providing that an MAO must enter into a contract with CMS in which it "agrees to comply with the applicable requirements and standards of this part").

10. In addition, the Provider Agreement between Jefferson and Independence also requires the MAO Defendants to comply with federal Medicare law and their Medicare Advantage contracts with CMS with respect to coverage and payment of services. *See* Compl. Ex. 1 §§ 21.12(a) ("[Jefferson] and [Independence] agree to comply with all applicable local, State, and federal laws, rules and regulations, now or hereinafter in effect, to the extent that they directly or indirectly affect [Jefferson] or [Independence] and bear upon the subject matter of this Agreement."), 1.11 (defining "Covered Services" based on coverage under the relevant Benefit Program, including Medicare Advantage).

11. Jefferson's Complaint asserts claims against Independence for breach of contract and declaratory judgment with respect to several Independence claim coverage and payment policies that affect Medicare Advantage plan enrollees of MAO Defendants, involve purported violations of federal law, and implicate MAO Defendants' role as a MAOs administering Medicare Advantage plan benefits pursuant to federal Medicare law. Compl. ¶¶ 158-174.

12. ***First***, Jefferson alleges that Independence improperly imposed a "severity policy" on Medicare Advantage plan members and others that allows Independence to pay Jefferson a lower observation payment rate than the inpatient rate based on Independence's analysis of the severity of a patient's claim. *Id.* ¶¶ 37-73. Jefferson asserts that Independence's "severity policy" violates CMS's "Two Midnight Rule," under which "an inpatient admission is generally

appropriate for payment under Medicare Part A when the admitting physician expects the patient to require hospital care that crosses two midnights." *Id.* ¶¶ 40-43 (quoting 42 C.F.R. § 412.3(d)(1)). Jefferson alleges that Independence's "severity policy" violates federal Medicare law. *Id.* ¶¶ 47-49.

13. ***Second***, Jefferson alleges that, under its "severity policy," Independence improperly applies InterQual criteria to determine whether an inpatient stay—for Medicare Advantage plan members or others—should qualify for inpatient or observation reimbursement. *Id.* ¶¶ 50-55, 74-85. Jefferson asserts that Independence's use of InterQual criteria violates the Two Midnight Rule and other federal Medicare laws. *Id.* ¶¶ 50-52, 75-77. Jefferson alleges that Independence's use of InterQual criteria has resulted in Independence improperly denying claims for coverage. *Id.* ¶¶ 78-81.

14. ***Third***, Jefferson alleges that Independence improperly imposed a "readmission policy" for Medicare Advantage plan members and others, under which Independence will not pay for a readmission within thirty days after discharge from a hospital. *Id.* ¶¶ 86-97.

15. ***Fourth***, Jefferson alleges that Independence improperly imposed an "ambulatory surgery center policy" for Medical Advantage plan members and others, under which Independence will only pay for certain procedures to be performed at ambulatory surgery centers, rather than in a hospital. *Id.* ¶¶ 98-110.

16. ***Fifth***, Jefferson asserts that Independence failed to reimburse Jefferson for outpatient drugs at the required rates under the Federal 340B Drug Discount Program. *Id.* ¶¶ 111-157 (citing 42 U.S.C. § 256b, the federal statute establishing the 340B Program). Jefferson alleges that Independence paid Jefferson for outpatient drugs from January 1, 2018, through September 27, 2022, at a rate that "has now been held by the Supreme Court to be unlawful and contrary to

statute." *Id.* ¶ 138. Jefferson asserts that Independence must now comply with a CMS Final Rule published in November 2023 purporting to require Independence to retroactively make a lump sum payment making up the difference "between what [Jefferson] should have been paid and what [Jefferson] was paid … between 2018 and 2022. *Id.* ¶¶ 135-136.

17. Jefferson seeks both monetary damages and a permanent injunction precluding Independence—including MAO Defendants—from allegedly "imposing its 'severity policy,' violating the Two Midnight Rule, imposing its readmission policy, imposing its ambulatory surgery center policy, and/or failing to pay the required rates under Section 340B." *Id.* ¶ 174. That permanent injunction would apply to MAO Defendants' coverage, payment, and reimbursement policies for Medicare Advantage plan members.

18. No other proceedings in this action have been held in the Philadelphia Court of Common Pleas, and the documents attached as Exhibit A constitute all processes and pleadings filed with the Philadelphia Court of Common Pleas in this case. A true and correct copy of the state court civil docket as of the filing of this Notice is attached hereto as Exhibit B.

## II. <u>FIRST GROUND FOR REMOVAL: FEDERAL OFFICER REMOVAL STATUTE</u>

19. This action is removable under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), because Jefferson has sued MAO Defendants for actions taken "under color of" federal law while MAO Defendants act at the direction of CMS by serving as MAOs that provide and administer Medicare Advantage benefit plans.

20. This Court has Federal Officer Removal jurisdiction based on MAO Defendants' participation in the Medicare program as MAOs—i.e., as government contractors to the federal agency CMS—and the government's "detailed regulation, monitoring [and] supervision" of MAO Defendants' MAO-related activities. *See Watson v. Philip Morris Co.*, 551 U.S. 142, 153 (2007).

MAO Defendants administer Medicare Advantage plans and benefits pursuant to their contracts with CMS and the comprehensive federal statutory and regulatory framework governing the Medicare program.

21. The Federal Officer Removal Statute provides:

> [A] civil action or criminal persecution that is commenced in a State court and that is against or directed to any of the following may be removed to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office …

28 U.S.C. § 1442(a)(1).

22. The Federal Officer Removal Statute "is to be liberally construed in favor of the federal forum," unlike federal question removal under 28 U.S.C. § 1441—which is "to be strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *Cessna v. REA Energy Coop., Inc.*, 753 F. App'x 124, 125 (3d Cir. 2018).

23. A case is removable under the Federal Officer Removal Statute where a defendant shows that (1) it is a "person" within the meaning of the statute; (2) it is "acting under" a federal officer or federal agency's authority; (3) the plaintiff's claims are "for, or relating to an act under color of federal office"; and (4) the defendant can assert a "colorable federal defense" to plaintiff's claims. *Golden v. N.J. Inst. of Tech.*, 934 F.3d 302, 309 (3d Cir. 2019) (internal quotations omitted); *see also Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016).

24. As set forth below, the requirements for removal under the Federal Officer Removal Statute are met in this case.

25. ***First***, MAO Defendants are "persons" under the Federal Officer Removal Statute, as a "person" is defined to "include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." *See* 1 U.S.C. § 1.

26. ***Second***, MAO Defendants are "acting under" the federal government's authority in offering and administering Medicare Advantage plans that provide federal Medicare benefits to enrollees and reimbursing providers for covered claims. MAO Defendants administer these Medicare benefits under the direct and detailed supervision of CMS, the federal agency that administers Medicare, and pursuant to MAO Defendants' contracts with CMS, as well as pursuant to applicable federal Medicare laws and regulations.

27. The term "acting under" should be liberally construed under the Federal Officer Removal Statute. *See Watson*, 551 U.S. at 147. Here, MAO Defendants do not merely operate private insurance programs subject to federal regulation. Through their contracts with CMS, MAO Defendants administer a basic governmental task—providing healthcare benefits for Medicare beneficiaries—that, absent MAO Defendants' contracts with CMS, the federal agency would be required to perform itself. MAO Defendants therefore directly assist CMS in carrying out its statutory obligations to provide federal Medicare benefits through Medicare Advantage plans.

28. Courts in the Third Circuit and elsewhere consistently hold that MAOs like MAO Defendants satisfy the "acting under" requirement of the Federal Officer Removal Statute by providing Medicare Advantage coverage to Medicare enrollees and reimbursing providers for covered services. *See, e.g.*, *Spark Inspiration Lab., LLC v. UnitedHealthcare Ins. Co.*, 2024 WL 3541929, at *4 (D.N.J. May 17, 2024) (finding that MAO was "acting under" the federal government "by providing Medicare Advantage plans to enrollees" and "helping the government produce an item that it needs"), *report and recommendation adopted*, 2024 WL 3540415 (D.N.J.

July 23, 2024); *MHA, LLC v. Amerigroup Corp.*, 2021 WL 226110, at *5 (D.N.J. Jan. 21, 2021) ("I find, in agreement with nearly every other court that has considered the issue, that [MAOs] like Amerigroup are 'acting under' the government by providing Medicare Advantage plans. Amerigroup 'assist[s]' the government and 'help[s] carry out' the government's duty by providing Medicare coverage via Medicare Advantage plans to enrollees.");[3] *see also Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, 2023 WL 2573914, at *3 (5th Cir. 2023) ("WellMed [an MAO subcontractor] has demonstrated that it assisted CMS in administering Medicare benefits on behalf of the federal government … WellMed was performing obligations that CMS would have otherwise been required to provide … WellMed goes a step further in demonstrating that 'unusually close relationship' [with the federal government] by also showing that it was subject to extensive 'detailed regulation, monitoring, [and] supervision' by the federal government while it was assisting the government in carrying out its delegated duties."); *Assocs. Rehab. Recovery, Inc. v. Humana Medical Plan, Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014) (holding that MAO was "acting under" the federal government by administering Medicare benefits on behalf of the federal government for Medicare enrollees in the Medicare Advantage plans); *Body & Mind Acupuncture v. Humana Health Plan, Inc.*, 2017 WL 653270, at *5 (N.D. W. Va. Feb. 16, 2017) (holding that MAO was "acting under" the federal government because MAO's "activities involve an effort to assist, or to help carry out, the duties or tasks of a federal superior in a manner much more significantly than simply complying with the law," and such "responsibility is more akin to delegation of CMS administrative obligations than a regulation of otherwise private insurance").

---

[3] In *MHA*, the District of New Jersey noted that the few cases outside the Third Circuit holding that MAOs do not qualify for Federal Officer Removal are "contrary to the weight of authority," and "district courts outside the Sixth Circuit are essentially unanimous in concluding that [MAOs] are entitled to federal jurisdiction via the [Federal] Officer Removal Statute." *MHA*, 2021 WL 226110, at *6.

29. ***Third***, Jefferson's claims against MAO Defendants are "for, or relating to an act under color of federal office." This requirement is satisfied so long as there is "a connection or association between the act in question and the federal office." *Papp*, 842 F.3d at 813. That is easily met here. Jefferson asserts that Independence—including MAO Defendants—have imposed policies on Medicare Advantage plan members that violate federal Medicare law and resulted in improper denials of coverage, impacting reimbursement to Jefferson for services provided to Medicare Advantage plan members. In particular, Jefferson claims that Independence's "severity policy" violates CMS's Two Midnight Rule, Independence's application of InterQual criteria for purposes of determining inpatient severity violates federal Medicare law, and Independence has denied required coverage for Medicare Advantage plan members, resulting in less reimbursement to Jefferson. *See* Compl. ¶¶ 37-97. Jefferson also claims that Independence has improperly implemented its "readmission policy" and "ambulatory surgery center policy" on Medicare Advantage plan participants. *Id.* ¶¶ 86-110. In short, the conduct challenged by Jefferson was undertaken in part by MAO Defendants in connection with their administration of Medicare Advantage benefits.

30. Jefferson's claims arise directly from Independence's—including MAO Defendants'—coverage policies, reimbursement policies, and purported denial of claims for Medicare Advantage plan members. Among other things, Jefferson challenges MAO Defendants' determinations and policies concerning the Medicare coverage status and corresponding reimbursement for services rendered to Medicare Advantage participants. There is clearly a connection or association between these alleged acts and MAO Defendants' administration of Medicare Advantage plans as an MAO. *See MHA*, 2021 WL 226110, at *7 (finding the "for, or relating to" element satisfied where plaintiff sought payment for claims denied for services

rendered by an MAO pursuant to their contract with CMS); *Spark*, 2024 WL 3541929, at *5 (finding element satisfied where plaintiff's claims were premised on MAO's failure to pay provider pursuant to obligations as MAO); *Trinity*, 2022 WL 837495, at *4 (finding element satisfied where claims centered on MAO subcontractor's alleged failure to reimburse according to federal Medicare law).

31. ***Fourth***, MAO Defendants have colorable federal defenses to Jefferson's claims, including that MAO Defendants paid claims and issued reimbursements to Jefferson in accordance with federal Medicare laws and regulations, and the challenged Independence coverage and payment policies do not violate federal Medicare laws and regulations.[4] *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 473-74 (3d Cir. 2015) (holding that a federal officer's compliance with federal law in challenged conduct is a colorable federal defense under the Federal Officer Removal Statute). At this stage, MAO Defendants "need only show that the defense was legitimate and [could] reasonably be asserted, given the facts presented and the current law." *Spark*, 2024 WL 3541929, at *6 (quoting *Papp*, 842 F.3d at 815). MAO Defendants need not demonstrate at this time that the asserted defenses will succeed on the merits. *See id.*

32. Accordingly, MAO Defendants are entitled to remove this action because this Court has jurisdiction under the Federal Officer Removal Statute. *See, e.g.*, *MHA*, 2021 WL 226110, at *5 (granting removal for MAO under Federal Officer Removal Statute because "[b]y providing Medicare Part C [Medicare Advantage] coverage and reimbursing providers, [MAOs] help[] the government 'produce an item that it needs,' namely, Medicare coverage for enrollees … In doing

---

[4] MAO Defendants possess other federal defenses and reserve the right to assert all defenses as required at the appropriate time. "[O]nly one [federal defense] need[s] to be colorable in order to justify invocation of the [Federal] Officer Removal Statute." *MHA*, 2021 WL 226110, at *7.

so, [defendant MAO] goes 'beyond simple compliance with the law and helps officers fulfill other basic governmental tasks").

33. By invoking Federal Officer Removal under 28 U.S.C. § 1442(a)(1), this Court has jurisdiction over the entire case, including all claims and allegations asserted by Jefferson, whether grounded in state contract law or federal Medicare law, and whether against MAO Defendants and/or AmeriHealth HMO. *See, e.g.*, *Barber v. Avco Corp.*, 2015 WL 718507, at *1 n.3 (E.D.P.A. Nov. 16, 2015) ("Whereas all defendants must consent to removal under 28 U.S.C. Section 1441, a defendant acting under a federal officer can unilaterally remove a case under Section 1442. Since the defendant acting under a federal officer is the only one entitled to remove under Section 1442, he alone can remove without other defendants joining in the petition, and the entire case is removed to the federal court."); *Lewis v. Asbestos Corp.*, 2012 WL 3240941, at *6 (D.N.J. Aug. 7, 2012) (holding that court could exercise supplemental jurisdiction over state law claims because "[r]emoval based on § 1442 … applies to the entire matter").

34. In any event, all defendants join in and/or consent to removal here, including defendant AmeriHealth HMO.

35. To the extent that any of Jefferson's claims do not come within the original jurisdiction of this Court under 28 U.S.C. § 1442, the Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367, as each claim in the Complaint relies upon, in part, the same operative facts and allegations, and all allegations form part of the same case or controversy.

## III. SECOND GROUND FOR REMOVAL: FEDERAL QUESTION JURISDICTION

36. In addition to Federal Officer Removal Jurisdiction, this Court also has original jurisdiction under 28 U.S.C. § 1331 because Jefferson's state-law claims against MAO Defendants necessarily raise substantial and disputed questions of federal law.

37. As mentioned above, Jefferson pleads breach of contract and declaratory judgment claims against MAO Defendants. These purported state law claims, however, cannot be resolved without determining significant issues of federal law.

38. Jefferson specifically alleges that MAO Defendants violated obligations that depend upon the meaning, interpretation, application, and legal effect of federal statutes, regulations, rules, cases, and/or federal agency requirements governing federal Medicare law. For instance, Jefferson alleges:

a) Independence "must (under both the [Provider Agreement] and the law) pay for inpatient admission when the Two Midnight Rule is satisfied." Compl. ¶ 48.

b) Independence is "generally not permitted to use InterQual criteria to make a determination as to whether a service is inpatient or observation," and Independence improperly applies InterQual criteria in violation of Medicare laws under its "severity policy." *Id.* ¶¶ 50-52, 75-76.

c) Independence has committed "Violations of the 'Two Midnight Rule.'" *Id.* at 14.

d) "Despite being obligated to follow the Two Midnight Rule, [Independence] has not done so," and Independence has therefore improperly refused to pay for inpatient care and denied claims. *Id.* ¶¶ 76-77.

e) Independence has violated federal law regarding reimbursement of 340B outpatient drug costs. *Id.* ¶¶ 111-157.

39. In its Complaint, Jefferson cites numerous federal statutes, regulations, rules, and court decisions that have been purportedly violated by MAO Defendants through their challenged

coverage and payment policies, and which Jefferson thus asserts will need to be interpreted by the Court for resolution of Jefferson's claims, including:

a) CMS's Two Midnight Rule, 42 C.F.R. § 412.3, and CMS's purported explanations for the rule, *see* 78 Fed. Reg. 50, 506, 27,486, 27,648;

b) Federal Medicare Advantage coverage laws, regulations, and rules, including 42 U.S.C. § 1395w-22, 42 C.F.R. § 422.101, 88 Fed. Reg. 22,120;

c) Federal Medicare laws, regulations, and rules regarding the use of InterQual criteria for inpatient vs. outpatient determinations, 88 Fed. Reg. 22,120;

d) Federal law regarding 340B outpatient drug program reimbursement requirements, 42 U.S.C. §§ 256b, 1395l; and

e) Federal law, regulations, court decisions, and rules regarding CMS's reimbursement rate from 2018-2022 under the 340B program, including *Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896 (2022) and its progeny, as well as 82 Fed. Reg. 59,353, and CMS's November 8, 2023 Final Rule.

40. Resolution of Jefferson's claims against MAO Defendants necessarily requires the Court to determine whether federal law requires, prohibits, or authorizes conduct challenged in the Complaint.

41. These federal issues are actually disputed.

42. These issues are substantial because they concern the interpretation and uniform application of a federal statutory and regulatory scheme administered by the federal government.

43. Federal resolution of those issues is important beyond the interests of the parties and implicates the federal government's interest in the consistent interpretation of federal law.

44. Exercising federal jurisdiction is consistent with the congressionally approved balance between federal and state judicial responsibilities because the federal issues presented are central—and not merely collateral—to Jefferson's claims.

45. Accordingly, this action falls within the category of cases recognized by the Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and its progeny.

46. Jefferson seeks relief—including a permanent injunction precluding MAO Defendants from applying certain coverage and payment policies going forward—that will necessarily depend on the Court deciding, among other things:

a) Whether federal law requires MAO Defendants to provide reimbursement at the same level of care for which coverage was approved (e.g., inpatient rather than observation), when a treating physician expects an MAO Defendant insured to stay in a hospital for treatment across two midnights;

b) Whether MAO Defendants' use of InterQual criteria runs afoul of federal law and CMS guidance;

c) The legal effect of the Supreme Court's ruling in *Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896 (2022) and CMS's November 8, 2023 Final Rule regarding the "remedy" for underpaid 340B drugs from 2018 to 2022. Among other things, the Court must determine the nature of CMS's Final Rule, including whether it functions as a retrospective change to CMS's governing rates during the 2018-2022 period, and whether it legally overrides contractual language in the Provider Agreement regarding

retroactive changes such that MAO Defendants must now pay Jefferson retroactively for rate changes.

47. To make such determinations, the Court will need to determine the meaning of relevant federal law, whether MAO Defendants' conduct complied with the federal law, whether federal law required or prohibited the challenged conduct, and the legal consequences flowing from that determination. The federal issues that the Court will need to determine are essential elements of Jefferson's claims and cannot be avoided through resolution of purely state-law questions.

48. Indeed, just months ago, Jefferson filed a lawsuit with substantively similar breach of contract and declaratory judgment claims against another MAO insurer, Aetna Health Inc. ("Aetna"), in federal court in the Eastern District of Pennsylvania based on federal question jurisdiction. *See* Complaint ¶ 11, *Thomas Jefferson Univ. v. Aetna Health Inc.*, No. 5:26-cv-02215-JMG (Apr. 6, 2026), ECF No. 1 ("This Court has jurisdiction over this dispute under 28 U.S.C. § 1331 because [Jefferson] assert[s] claims based on federal law against Aetna.").

49. As here, Jefferson alleges in that lawsuit that Aetna breached its provider agreement with Jefferson by implementing a severity policy in violation of CMS's Two Midnight Rule, resulting in Aetna improperly denying coverage and/or underpaying Jefferson for services provided to Medical Advantage plan members. *Id.* ¶¶ 1-6. Jefferson further alleges, as with Independence here, that Aetna's severity policy violates the Two Midnight Rule by applying MCG criteria[5] to downgrade inpatient stays based on level of severity, such that Aetna reimburses Jefferson for such stays at a lower outpatient rate, rather than an inpatient rate. *Id.* ¶¶ 6, 40-48, 56-

[5] MCG and InterQual are criteria used to assess patient severity. *See* 88 Fed. Reg. 22,120, at 22,194.

59. And like its Complaint here against Independence, Jefferson seeks a declaratory judgment that Aetna's severity policy violates the Two Midnight Rule and precluding Aetna from imposing the severity policy. *Id.* ¶ 90.

50. As noted above, to the extent that any of Jefferson's claims do not come within the original jurisdiction of this Court under 28 U.S.C. § 1331, the Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367, as each claim in the Complaint relies upon, in part, the same operative facts and allegations, and all allegations form part of the same case or controversy.

## IV. ALL PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET

51. Timeliness. MAO Defendants were served a copy of the Complaint on July 28, 2026. No other defendant was served before that date. This Notice of Removal is being filed within the 30-day time period from service set forth in 28 U.S.C. § 1446(b)(1). Accordingly, this Notice of Removal is timely filed.

52. Removal to proper court. Venue is proper under 28 U.S.C. §§ 1391 and 1441(a) because the United States District Court for the Eastern District of Pennsylvania is the federal judicial district embracing the Philadelphia Court of Common Pleas, where Jefferson originally filed this action, and a substantial part of the alleged events or omissions giving rise to Jefferson's claims are alleged to have occurred in this judicial district.

53. Pleadings and process. Pursuant to 28 U.S.C. § 1446(a), MAO Defendants have attached hereto a true and accurate copy of "all process, pleadings, and orders" from the removed action in the Philadelphia Court of Common Pleas. *See* Ex. A.

54. Notice to state court. A copy of this Notice of Removal will be filed with the Clerk of the Philadelphia Court of Common Pleas, C.A. No. 260702609, and MAO Defendants will promptly give Jefferson written notice of this filing, in compliance with 28 U.S.C. § 1446(d).

55. Authority. The undersigned is counsel for all defendants and duly authorized to effect removal on behalf of MAO Defendants, which comprises defendants Keystone Health Plan East and QCC Insurance Company in the action. Defendant AmeriHealth MO also consents to removal, if required.

56. By removing this action to this Court, MAO Defendants reserve all rights and defenses, including but not limited to, seeking dismissal and all other available grounds for procedural or substantive motions.

## VI. CONCLUSION

MAO Defendants hereby remove the above-referenced action from the Philadelphia Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania and request that this Court assume jurisdiction over all further proceedings.

Respectfully submitted,

Dated: August 14, 2026

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Brian W. Shaffer*

Brian W. Shaffer (Pa. ID No. 78851)
Natalie Georges (Pa. ID No. 323893)
Diana P. Cortes (Pa. ID No. 204274)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
brian.shaffer@morganlewis.com
natalie.georges@morganlewis.com
diana.cortes@morganlewis.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 14, 2026, I caused a true and correct copy of the foregoing Notice of Removal to be served via email upon:

Aaron Krauss
R. Christopher Raphaely
Danielle E. Sapega
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-5181
akrauss@cozen.com
craphaely@cozen.com
dsapega@cozen.com

*Counsel for Plaintiff*

*/s/ Brian W. Shaffer*
Brian W. Shaffer