**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS JEFFERSON UNIVERSITY d/b/a JEFFERSON HEALTH,<br><br>Plaintiff / Counterclaim Defendant,<br><br>v.<br><br>KEYSTONE HEALTH PLAN EAST, QCC INSURANCE COMPANY, and AMERIHEALTH HMO,<br><br>Defendants / Counterclaim Plaintiffs. | Civil Action No. 2:26-cv-05883-GAM |

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS**

Defendants Keystone Health Plan East, Inc., QCC Insurance Company, and AmeriHealth HMO (collectively, "Independence" or "Defendants"), by and through their undersigned counsel, hereby answer and respond to Plaintiff Thomas Jefferson University d/b/a Jefferson Health's ("Jefferson") Complaint (ECF No. 1-1), and assert counterclaims as set forth herein. Except as otherwise expressly indicated herein, Independence denies each and every allegation. In addition, Independence denies all introductory statements, headings, subheadings, and footnotes in the Complaint, unless expressly indicated herein. Independence expressly reserves the right to amend or supplement this Answer.

***

Response to Introduction: The unnumbered introductory section of the Complaint consists of a summary of Jefferson's allegations, which are addressed in Independence's responses in subsequent paragraphs, as well as legal conclusions to which no response is required. To the extent a response is required, Independence denies the allegations in the introductory section of the Complaint, except to the extent expressly admitted in its responses to the numbered paragraphs below. Independence expressly denies that its emergent inpatient admissions policy, readmission

policy, site of care policy, and 340B payments constitute breaches of contract, improper unilateral amendments of the contract, or are otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policies and make the 340B payments at issue, and those policies and payments comply with all contractual requirements and applicable laws. Further, Independence denies that it has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

1. Admitted that Jefferson is a university and medical center that does business as Jefferson Health. Independence lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1, and they are therefore denied.

2. Admitted that Jefferson owns and operates hospitals and healthcare sites. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2, and they are therefore denied.

3. Admitted that Keystone Health Plan East, QCC Insurance Company, and AmeriHealth HMO are related insurance companies and subsidiaries of Independence Blue Cross, LLC. Admitted that Independence Blue Cross, LLC's headquarters is located at 1901 Market Street, Philadelphia, PA 19103. Any remaining allegations are denied.

4. Denied. By way of further response, Keystone Health Plan East, QCC Insurance Company, and AmeriHealth HMO insure fewer than two million Philadelphia-area residents.

5. Admitted that Keystone Health Plan East and QCC Insurance Company are licensees of the Blue Cross and Blue Shield Association. Any remaining allegations are denied.

6. The allegations in Paragraph 6 state legal conclusions to which no response is required.

7. The allegations in Paragraph 7 state legal conclusions to which no response is required.

8. Admitted that Jefferson and Independence entered into a Managed Care Participating Hospital Agreement originally effective September 1, 2017. The referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof. Any remaining allegations are denied.

9. Admitted that Jefferson and Independence entered into an amendment effective January 1, 2023. The referenced amendment is a written document that speaks for itself, and Independence denies any characterization thereof. Any remaining allegations are denied.

10. The allegations in Paragraph 10 state legal conclusions to which no response is required. Further, the referenced amendment is a written document that speaks for itself, and Independence denies any characterization thereof. Any remaining allegations are denied.

11. The allegations in Paragraph 11 state legal conclusions to which no response is required. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof. Any remaining allegations are denied.

12. The referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied.

13. The allegations in Paragraph 13 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

14. The referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied.

15. The referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied.

16. The allegations in Paragraph 16 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

17. The allegations in Paragraph 17 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

18. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, and they are therefore denied.

19. The allegations in Paragraph 19 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

20. The allegations in Paragraph 20 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced

contract is a written document that speaks for itself, and Independence denies any characterization thereof.

21. The allegations in Paragraph 21 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

22. The allegations in Paragraph 22 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

23. The allegations in Paragraph 23 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

24. Admitted that the contract permits Independence to change its procedures and hospital manual, including its payment policies, and that the contract requires the parties to resolve any disputes regarding policy changes through a contractual framework that Jefferson failed to follow with respect to the matters raised by the Complaint. The remaining allegations in Paragraph 24 state legal conclusions to which no response is required. To the extent a response is required, the remaining allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

25. Admitted that the contract permits Independence to change its procedures and hospital manual, including its payment policies. The remaining allegations in Paragraph 25 state

legal conclusions to which no response is required. To the extent a response is required, the remaining allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

26. The allegations in Paragraph 26 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

27. The allegations in Paragraph 27 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

28. Denied. Independence expressly denies that the policies at issue in this litigation constitute breaches of the contract, improper unilateral amendments of the contract, or are otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the payment policies at issue.

29. Denied. Independence specifically denies that the policies at issue in this litigation constitute breaches of the contract, improper unilateral amendments of the contract, or are otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the payment policies at issue.

30. Denied. Independence specifically denies that the policies at issue in this litigation constitute breaches of the contract, improper unilateral amendments of the contract, or are otherwise unlawful, improper, or "fundamentally unfair." To the contrary, the contract permitted Independence to adopt the payment policies at issue.

31. The allegations in Paragraph 31 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof. By way of further response, the contract permitted Independence to adopt the payment policies at issue.

32. The allegations in Paragraph 32 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

33. The allegations in Paragraph 33 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

34. The allegations in Paragraph 34 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

35. The allegations in Paragraph 35 state legal conclusions to which no response is required. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof.

36. The allegations in Paragraph 36 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization

thereof. Independence expressly denies that the contract permits Jefferson to initiate litigation over any dispute arising out of the contract without meeting contractual and legal prerequisites, including but not limited to the dispute resolution process in Section 19.2 of the contract, any applicable procedures outlined in hospital manuals or other policies issued by Independence, and/or the appeals procedures required as to each patient claim for which Jefferson seeks relief. To the extent any further response is required, the allegations are denied.

37. Admitted that policy bulletin MA00.059 went into effect on March 5, 2026, and that the contract permitted Independence to adopt the policy. By way of further response, the referenced policy is a written document that speaks for itself, and Independence denies any characterization thereof. Any remaining allegations are denied.

38. The referenced emergent inpatient admissions policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied.

39. Admitted that policy bulletin MA00.059 applies to Independence's Medicare Advantage products. By way of further response, the referenced emergent inpatient admissions policy is a written document that speaks for itself, and Independence denies any characterization thereof. Any remaining allegations are denied.

40. The allegations in Paragraph 40 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced regulation speaks for itself, and Independence denies any characterization thereof. By way of further response, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

41. The allegations in Paragraph 41 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced regulation speaks for itself, and Independence denies any characterization thereof.

42. The allegations in Paragraph 42 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced regulation speaks for itself, and Independence denies any characterization thereof. By way of further response, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

43. The allegations in Paragraph 43 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced regulation speaks for itself, and Independence denies any characterization thereof.

44. The allegations in Paragraph 44 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced Federal Register publication is a written document that speaks for itself, and Independence denies any characterization thereof.

45. The allegations in Paragraph 45 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced statute speaks for itself, and Independence denies any characterization thereof.

46. The allegations in Paragraph 46 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced Federal Register publication is a written document that speaks for itself, and Independence denies any characterization thereof.

47. The allegations in Paragraph 47 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced regulation speaks for itself, and Independence denies any characterization thereof. By way of further response, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

48. The allegations in Paragraph 48 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. By way of further response, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

49. The allegations in Paragraph 49 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced Federal Register publication is a written document that speaks for itself, and Independence denies any characterization thereof.

50. The referenced emergent inpatient admissions policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied. By way of further response, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

51. The allegations in Paragraph 51 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced

Federal Register publication is a written document that speaks for itself, and Independence denies any characterization thereof. By way of further response, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

52. The allegations in Paragraph 52 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced Federal Register publication is a written document that speaks for itself, and Independence denies any characterization thereof. By way of further response, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

53. The allegations in Paragraph 53 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced Federal Register publication is a written document that speaks for itself, and Independence denies any characterization thereof.

54. The referenced emergent inpatient admissions policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied. By way of further response, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

55. The referenced emergent inpatient admissions policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied. By way of further response, Independence's

emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

56. The referenced emergent inpatient admissions policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied. By way of further response, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

57. The allegations in Paragraph 57 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced Federal Register publication is a written document that speaks for itself, and Independence denies any characterization thereof.

58. The allegations in Paragraph 58 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof. Independence expressly denies that the emergent inpatient admissions policy constitutes a breach of the contract, improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

59. The referenced emergent inpatient admissions policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further

response is required, the allegations are denied. By way of further response, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

60. Denied. Independence expressly denies that the emergent inpatient admissions policy constitutes a breach of the contract, improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

61. Denied. Independence expressly denies that the emergent inpatient admissions policy constitutes a breach of the contract, improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

62. Denied that Independence's emergent inpatient admissions policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact or "additional burdens" from the emergent inpatient admissions policy. Independence lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 62, and they are therefore denied. Further, the referenced emergent inpatient admissions policy is a

written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied. Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy.

63. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, and they are therefore denied. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact or "administrative burden" from the emergent inpatient admissions policy. To the extent any further response is required, the allegations are denied. Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy.

64. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64, and they are therefore denied. To the extent any further response is required, the allegations are denied. Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy.

65. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65, and they are therefore denied. Further, the referenced emergent inpatient admissions policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied. Independence expressly denies that the emergent inpatient admissions policy constitutes a breach of the contract, improper unilateral amendment of the contract, or is otherwise unlawful, improper, or "inappropriate." Further, Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy.

66. Denied that Independence has made "underpayments" to Jefferson as a result of its emergent inpatient admissions policy, or that the emergent inpatient admissions policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper. Independence lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 66, and they are therefore denied. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact or "burden" from the emergent inpatient admissions policy. To the extent any further response is required, the allegations are denied. Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy.

67. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67, and they are therefore denied. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact or "patient confusion and frustration" from the emergent inpatient admissions policy. Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy.

68. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68, and they are therefore denied. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact from the emergent inpatient admissions policy. Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy.

69. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69, and they are therefore denied. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact or

likely patient frustration from the emergent inpatient admissions policy. Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy.

70. Admitted only that Jefferson sent Independence correspondence regarding the emergent inpatient admissions policy before Jefferson filed this lawsuit. That correspondence is reflected in written documents that speak for themselves, and Independence denies any characterization thereof. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact from the emergent inpatient admissions policy. Independence expressly denies that its emergent inpatient admissions policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper. Further, Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy. Any remaining allegations are denied.

71. Denied that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy. Independence expressly denies that the emergent inpatient admissions policy constitutes a breach of the contract, improper unilateral amendment of the contract, or is otherwise unlawful or improper. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact from the emergent inpatient admissions policy, despite claiming, without support, $11.5 million in supposed damages for a policy that went into effect less than six months before filing suit. Independence lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 71, and they are therefore denied. Independence expressly denies that its emergent

inpatient admissions policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper.

72. Denied. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact. Further, Independence denies that it failed to negotiate the contract's financial terms. To the contrary, Independence was negotiating with Jefferson in good faith when Jefferson upended the negotiation process by prematurely filing this lawsuit. Further, Independence expressly denies that the emergent inpatient admissions policy constitutes a breach of the contract, improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

73. Denied. Independence expressly denies that its emergent inpatient admissions policy constitutes a breach of the contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper, and expressly denies that Jefferson is entitled to any relief or recovery of damages related to the emergent inpatient admissions policy. To the contrary, Independence's emergent inpatient admissions policy complies with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

74. The allegations in Paragraph 74 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced "Two Midnight Rule" is a law or regulation that speaks for itself, and Independence denies any characterization thereof. Independence expressly denies that it has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual

requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

75. The allegations in Paragraph 75 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced Federal Register publication is a written document that speaks for itself, and Independence denies any characterization thereof. Independence expressly denies that it has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

76. The allegations in Paragraph 76 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Independence expressly denies that it has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

77. Denied. The referenced emergent inpatient admissions policy is a written document that speaks for itself, and Independence denies any characterization thereof. Independence expressly denies that its payment to Jefferson for purported inpatient care constitutes a breach of contract, an improper unilateral amendment of the contract, a violation of any laws, or is otherwise unlawful or improper. Further, Independence expressly denies that it has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

78. The allegations in Paragraph 78 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Independence expressly denies that its payment to Jefferson for purported inpatient care constitutes a breach of contract, an improper unilateral amendment of the contract, a violation of any laws, or is otherwise unlawful or improper. Further, Independence expressly denies that it has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

79. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79, and they are therefore denied. By way of further response, Independence requested that the parties meet in good faith to discuss specific cases where Jefferson believed there was disagreement over patient coverage or payment determinations under the Two Midnight Rule, but Jefferson chose not to do so before filing this lawsuit. Further, any coverage determinations regarding the alleged patient in Paragraph 79 are reflected in written documents that speak for themselves, and Independence denies any characterization thereof. Independence expressly denies that any final coverage determinations with respect to the alleged patient in Paragraph 79 were unlawful or improper. To the contrary, Independence's coverage determinations complied with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule. Any remaining allegations are denied.

80. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80, and they are therefore denied. By way of further response, Independence requested that the parties meet in good faith to discuss specific cases where Jefferson

believed there was disagreement over patient coverage or payment determinations under the Two Midnight Rule, but Jefferson chose not to do so before filing this lawsuit. Further, any coverage determinations regarding the alleged patient in Paragraph 80 are reflected in written documents that speak for themselves, and Independence denies any characterization thereof. Independence expressly denies that any final coverage determinations with respect to the alleged patient in Paragraph 80 were unlawful or improper. To the contrary, Independence's coverage determinations complied with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule. Any remaining allegations are denied.

81. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, and they are therefore denied. By way of further response, Independence requested that the parties meet in good faith to discuss specific cases where Jefferson believed there was disagreement over patient coverage or payment determinations under the Two Midnight Rule, but Jefferson chose not to do so before filing this lawsuit. Further, any coverage determinations regarding the alleged patient in Paragraph 81 are reflected in written documents that speak for themselves, and Independence denies any characterization thereof. Independence expressly denies that any final coverage determinations with respect to the alleged patient in Paragraph 81 were unlawful or improper. To the contrary, Independence's coverage determinations complied with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule. Any remaining allegations are denied.

82. Admitted only that Jefferson sent Independence correspondence regarding the Two Midnight Rule before Jefferson filed this lawsuit. That correspondence is reflected in written

documents that speak for themselves, and Independence denies any characterization thereof. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact from purported violations of the Two Midnight Rule. Independence expressly denies that it has violated the Two Midnight Rule. To the contrary, Independence's coverage determinations complied with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule. Further, Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to purported violations of the Two Midnight Rule. Any remaining allegations are denied.

83. Denied that Independence has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule. Denied that Jefferson is entitled to any relief or recovery of damages related to purported violations of the Two Midnight Rule. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact. Independence lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 83, and they are therefore denied.

84. Denied. Independence expressly denies any violations of the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact. Further, Independence denies that it failed to negotiate the contract's financial terms. To the contrary, Independence was negotiating with

Jefferson in good faith when Jefferson upended the negotiation process by prematurely filing this lawsuit.

85. Denied. Independence expressly denies that it has violated the Two Midnight Rule, and expressly denies that Jefferson is entitled to any relief or recovery of damages related to purported violations of the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

86. Admitted that Independence issued a revised version of its hospital readmission policy for Medicare Advantage products on April 1, 2026, and that revised policy went into effect on May 1, 2026, and that the contract permitted Independence to adopt the policy. By way of further response, the referenced readmission policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the remaining allegations are denied.

87. Admitted only that Independence issued a revised version of its hospital readmission policy for commercial products on April 1, 2026, and that revised policy went into effect on May 1, 2026, and that the contract permitted Independence to adopt the policy. By way of further response, the referenced readmission policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the remaining allegations are denied.

88. Denied. The referenced readmission policy is reflected in written documents that speak for themselves, and Independence denies any characterization thereof. Independence specifically denies that the readmission policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, the

contract permitted Independence to adopt the readmission policy, and the policy complies with all contractual obligations and applicable laws.

89. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89, and they are therefore denied. Further, Independence denies that the readmission policy is clinically inappropriate. To the contrary, the policy encourages strong discharge planning and follow-up care processes so that patients can recover safely and avoid unnecessary returns to the hospital.

90. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90, and they are therefore denied. Further, Independence denies that the readmission policy is clinically inappropriate. To the contrary, the policy encourages strong discharge planning and follow-up care processes so that patients can recover safely and avoid unnecessary returns to the hospital.

91. Independence lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91, and they are therefore denied. Further, Independence denies that the readmission policy is clinically inappropriate. To the contrary, the policy encourages strong discharge planning and follow-up care processes so that patients can recover safely and avoid unnecessary returns to the hospital.

92. Denied. Independence expressly denies that the readmission policy constitutes a breach of contract, improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws. By way of further response, Jefferson has never provided any documented support for any claimed adverse financial impact

from the readmission policy. Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the readmission policy.

93. The readmission policy is a written document that speaks for itself, and Independence denies any characterization thereof. Further, Independence denies that the readmission policy is clinically inappropriate. To the contrary, the policy encourages strong discharge planning and follow-up care processes so that patients can recover safely and avoid unnecessary returns to the hospital. To the extent any further response is required, the allegations are denied.

94. Admitted only that Jefferson sent Independence correspondence regarding the readmission policy before Jefferson filed this lawsuit. That correspondence is reflected in written documents that speak for themselves, and Independence denies any characterization thereof. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact from the readmission policy. Independence expressly denies that its readmission policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws. Further, Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the readmission policy. Any remaining allegations are denied.

95. Denied that Jefferson is entitled to any relief or recovery of damages related to the readmission policy. Independence expressly denies that its readmission policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws. Independence lacks knowledge

or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 95, and they are therefore denied. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact from the readmission policy, despite claiming, without support, $18.3 million in supposed damages for a policy that went into effect less than three months before filing suit.

96. Denied. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact from the readmission policy. Further, Independence denies that it failed to negotiate the contract's financial terms. To the contrary, Independence was negotiating with Jefferson in good faith when Jefferson upended the negotiation process by prematurely filing this lawsuit. Further, Independence expressly denies that the readmission policy constitutes a breach of the contract, improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws.

97. Denied. Independence expressly denies that its readmission policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper, and expressly denies that Jefferson is entitled to any relief or recovery of damages related to the readmission policy. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws.

98. Admitted that Independence issued a site of care policy for elective procedures for Medicare Advantage products on March 2, 2026, and that policy went into effect on June 1, 2026, and that the contract permitted Independence to adopt the policy. By way of further response, the referenced site of care policy is a written document that speaks for itself, and Independence denies

any characterization thereof. To the extent any further response is required, the remaining allegations are denied.

99. Admitted that Independence issued a site of care policy for elective procedures for commercial products on March 2, 2026, and that policy went into effect on June 1, 2026, and that the contract permitted Independence to adopt the policy. By way of further response, the referenced site of care policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the remaining allegations are denied.

100. The referenced site of care policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied. Independence expressly denies that the site of care policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper, or that procedures covered by the site of care policy are clinically inappropriate for ambulatory surgery centers. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws.

101. The allegations in Paragraph 101 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the site of care policy is a written document that speaks for itself, and Independence denies any characterization thereof.

102. The referenced site of care policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied. Independence expressly denies that the site of care policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or

improper, or that procedures covered by the site of care policy are clinically inappropriate for ambulatory surgery centers. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws.

103. The referenced site of care policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied. Independence expressly denies that the site of care policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper, or that procedures covered by the site of care policy are clinically inappropriate for ambulatory surgery centers. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws. By way of further response, Jefferson has never provided documented support for any alleged "inconvenience" caused by the policy.

104. The referenced site of care policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required, the allegations are denied. Independence expressly denies that the site of care policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper, or that procedures covered by the site of care policy are clinically inappropriate for ambulatory surgery centers. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws. By way of further response, Jefferson has never provided documented support for any alleged "delays" caused by the policy.

105. The referenced site of care policy is a written document that speaks for itself, and Independence denies any characterization thereof. To the extent any further response is required,

the allegations are denied. Further, Independence lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 105, and they are therefore denied. Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the site of care policy. Independence expressly denies that the site of care policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper, or that procedures covered by the site of care policy are clinically inappropriate for ambulatory surgery centers. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws. By way of further response, Jefferson has never provided documented support for any alleged "increased administrative time" caused by the policy.

106. The allegations in Paragraph 106 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract speaks for itself, and Independence denies any characterization thereof. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact from by the policy. Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the site of care policy. Independence expressly denies that the site of care policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper, or that procedures covered by the site of care policy are clinically inappropriate for ambulatory surgery centers. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws.

107. Admitted only that Jefferson sent Independence correspondence regarding the site of care policy before Jefferson filed this lawsuit. That correspondence is reflected in written

documents that speak for themselves, and Independence denies any characterization thereof. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact from the site of care policy. Independence expressly denies that its site of care policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws. Further, Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the site of care policy. Any remaining allegations are denied.

108. Denied that Jefferson is entitled to any relief or recovery of damages related to the site of care policy. Independence expressly denies that its site of care policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws. Independence lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 108, and they are therefore denied. By way of further response, Jefferson has never provided documented support for any claimed adverse financial impact, despite claiming, without support, $35.4 million in supposed damages for a policy that went into effect less than two months before filing suit.

109. Denied. By way of further response, Jefferson has never provided support for any claimed adverse financial impact. Further, Independence denies that it did not negotiate the contract's financial terms. To the contrary, Independence was negotiating with Jefferson in good faith when Jefferson upended the negotiation process by prematurely filing this lawsuit. Further, Independence expressly denies that the site of care policy constitutes a breach of the contract,

improper unilateral amendment of the contract, or is otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws.

110. Denied. Independence expressly denies that its site of care policy constitutes a breach of contract, an improper unilateral amendment of the contract, or is otherwise unlawful or improper, and expressly denies that Jefferson is entitled to any relief or recovery of damages related to the site of care policy. To the contrary, the contract permitted Independence to adopt the policy, and the policy complies with all contractual requirements and applicable laws.

111. The allegations in Paragraph 111 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced statute speaks for itself, and Independence denies any characterization thereof.

112. Upon information and belief, admitted.

113. The allegations in Paragraph 113 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced statute speaks for itself, and Independence denies any characterization thereof.

114. The allegations in Paragraph 114 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

115. Upon information and belief, admitted.

116. The allegations in Paragraph 116 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced statute speaks for itself, and Independence denies any characterization thereof.

117. The allegations in Paragraph 117 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced statute speaks for itself, and Independence denies any characterization thereof.

118. The allegations in Paragraph 118 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced statute speaks for itself, and Independence denies any characterization thereof.

119. The allegations in Paragraph 119 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced statute speaks for itself, and Independence denies any characterization thereof. Further, CMS's official actions are reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

120. The allegations in Paragraph 120 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, CMS's official actions are reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

121. The allegations in Paragraph 121 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced Federal Register publication is a written document that speaks for itself, and Independence denies any characterization thereof. Further, CMS's official actions are reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

122. The allegations in Paragraph 122 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced Federal Register publication is a written document that speaks for itself, and Independence denies

any characterization thereof. Further, CMS's official actions are reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

123. The allegations in Paragraph 123 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, CMS's official actions are reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

124. The allegations in Paragraph 124 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, CMS's official actions are reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

125. Independence lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 125, and they are therefore denied. Further, the referenced lawsuits purportedly filed by the American Hospital Association and healthcare providers are presumably reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

126. The allegations in Paragraph 126 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced legal decision is a written document that speaks for itself, and Independence denies any characterization thereof.

127. The allegations in Paragraph 127 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced legal decision is a written document that speaks for itself, and Independence denies any characterization thereof.

128. The allegations in Paragraph 128 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced legal decision is a written document that speaks for itself, and Independence denies any characterization thereof.

129. The allegations in Paragraph 129 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

130. The allegations in Paragraph 130 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced legal decision is a written document that speaks for itself, and Independence denies any characterization thereof.

131. The allegations in Paragraph 131 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced legal decision is a written document that speaks for itself, and Independence denies any characterization thereof.

132. The allegations in Paragraph 132 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced legal decision is a written document that speaks for itself, and Independence denies any characterization thereof.

133. The allegations in Paragraph 133 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced legal decision is a written document that speaks for itself, and Independence denies any characterization thereof.

134. Independence lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 134, and they are therefore denied. Further, the referenced claim resubmissions should be reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

135. The allegations in Paragraph 135 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced CMS final rule speaks for itself, and Independence denies any characterization thereof.

136. The allegations in Paragraph 136 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced CMS final rule speaks for itself, and Independence denies any characterization thereof.

137. The allegations in Paragraph 137 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the referenced contract is a written document that speaks for itself, and Independence denies any characterization thereof. Independence expressly denies that its 340B reimbursement payments from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws.

138. Independence's 340B program payments are reflected in written documents that speak for themselves, and Independence denies any characterization thereof. To the extent any further response is required, the allegations regarding Independence's 340B payments are denied. The remainder of the allegations in Paragraph 138 state legal conclusions to which no response is required. To the extent a response is required, the remaining allegations are denied. Independence

expressly denies that its 340B reimbursement payments from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws.

139. The allegations in Paragraph 139 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Independence expressly denies that its 340B reimbursement payments from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws. Further, Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to 340B payments.

140. Denied. Independence expressly denies that its 340B reimbursement payments from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws. Further, Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to 340B payments.

141. The allegations in Paragraph 141 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the contract is a written document that speaks for itself, and Independence denies any characterization thereof.

Independence expressly denies that its 340B reimbursement payments from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws.

142. Independence lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 142, and they are therefore denied. Independence expressly denies that its 340B reimbursement payments from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws.

143. Independence's 340B program payments are reflected in written documents that speak for themselves, and Independence denies any characterization thereof. To the extent any further response is required, the allegations regarding Independence's 340B payments are denied. The remaining allegations in Paragraph 143 state legal conclusions to which no response is required. To the extent a response is required, the remaining allegations are denied. Independence expressly denies that its 340B reimbursement payments from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws.

144. Jefferson's submission of 340B program claims are reflected in written documents that speak for themselves, and Independence denies any characterization thereof. To the extent any further response is required, the allegations regarding Jefferson's 340B claim submissions are denied. The remaining allegations in Paragraph 144 state legal conclusions to which no response is required. To the extent a response is required, the remaining allegations are denied. Independence expressly denies that its 340B reimbursement payments from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws.

145. Denied. Independence's 340B program payments are reflected in written documents that speak for themselves, and Independence denies any characterization thereof. To the extent any further response is required, the allegations regarding Independence's 340B payments are denied. Independence expressly denies that its 340B reimbursement payments from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws.

146. Admitted only that Independence has set forth arguments based on the referenced footnote, under which Jefferson contractually agreed that retroactive CMS adjustments to 340B pricing would not apply to Independence's 340B payments to Jefferson. Independence's arguments and contentions concerning 340B payments are reflected in written documents that

speak for themselves, and Independence denies any characterization thereof. Independence expressly denies that its 340B reimbursement payments from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws.

147. Admitted that the contract contains the quoted language, including the statement that "[t]he parties agree, however, that retrospective changes made by CMS shall not apply." The contract is a written document that speaks for itself, and Independence denies any characterization thereof. Any remaining allegations are denied.

148. The allegations in Paragraph 148 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

149. The allegations in Paragraph 149 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, CMS's official actions are reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

150. The allegations in Paragraph 150 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, CMS's official actions are reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

151. The allegations in Paragraph 151 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, CMS's official actions are reflected in written documents that speak for themselves, and Independence denies any

characterization thereof. Independence expressly denies that CMS's 340B pricing adjustment was not retroactive or "retrospective," as CMS has expressly characterized the pricing adjustment as "retroactive." *See* 88 Fed. Reg. 77,150, 77,174 (Nov. 8, 2023).

152. The allegations in Paragraph 152 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, CMS's official actions are reflected in written documents that speak for themselves, and Independence denies any characterization thereof.

153. Admitted only that Jefferson sent Independence correspondence regarding 340B payments before Jefferson filed this lawsuit. That correspondence is reflected in written documents that speak for themselves, and Independence denies any characterization thereof. Independence expressly denies that its 340B reimbursement payments to Jefferson from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws. Further, Independence expressly denies that Jefferson is entitled to any relief or recovery of damages related to the 340B payments. Any remaining allegations are denied.

154. Denied that Jefferson is entitled to any relief or recovery of damages related to 340B payments. Independence lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 154, and they are therefore denied. Independence expressly denies that its 340B reimbursement payments to Jefferson from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the

negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws.

155. Denied. Independence expressly denies that its 340B reimbursement payments to Jefferson from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws. Further, Independence denies that it did not negotiate the contract's financial terms. To the contrary, Independence was negotiating with Jefferson in good faith when Jefferson upended the negotiation process by prematurely filing this lawsuit.

156. Denied. Independence expressly denies that its 340B reimbursement payments to Jefferson from January 1, 2018 to September 27, 2022 constitute a breach of contract, an improper unilateral amendment of the contract, or were otherwise unlawful or improper. To the contrary, Independence paid the negotiated 340B contractual rate that Jefferson agreed to accept for the period in question, and those payments complied with all contractual requirements and applicable laws.

157. The allegations in Paragraph 157 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further, the contract is a written document that speaks for itself, and Independence denies any characterization thereof.

158. Independence repeats and incorporates its responses to the preceding paragraphs as if fully set forth herein.

159. The allegations in Paragraph 159 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Independence expressly

denies that Jefferson followed and complied with the dispute resolution process set forth in Section 19.2 of the contract before filing suit. Further, as explained in Independence's Counterclaims, Jefferson is in breach of its obligations to Independence with respect to reconciliation for retroactive rate adjustments set forth in the January 1, 2023 amendment to the contract.

160. Denied. Independence expressly denies that its emergent inpatient admissions policy, readmission policy, site of care policy, and 340B payments constitute breaches of contract, improper unilateral amendments of the contract, or are otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policies and make the 340B payments at issue, and those policies and payments comply with all contractual requirements and applicable laws. Further, Independence denies that it has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

161. Denied. Independence expressly denies that its emergent inpatient admissions policy, readmission policy, site of care policy, and 340B payments constitute breaches of contract, improper unilateral amendments of the contract, or are otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policies and make the 340B payments at issue, and those policies and payments comply with all contractual requirements and applicable laws. Further, Independence denies that it has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

162. Denied. Independence expressly denies that its emergent inpatient admissions policy, readmission policy, site of care policy, and 340B payments constitute breaches of contract, improper unilateral amendments of the contract, or are otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policies and make the 340B payments at issue, and those policies and payments comply with all contractual requirements and applicable laws. Further, Independence denies that it has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

163. The allegations in Paragraph 163 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Independence expressly denies that Jefferson followed the dispute resolution process set forth in Section 19.2 of the contract before filing suit.

164. Denied.

165. Denied.

166. Independence repeats and incorporates its responses to the preceding paragraphs as if fully set forth herein.

167. The allegations in Paragraph 167 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

168. The allegations in Paragraph 168 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

169. Admitted only that Independence denies any liability to Jefferson and denies that its actions violate the contract or are otherwise unlawful or wrong. By way of further response,

Jefferson's and Independence's arguments and contentions concerning the alleged conduct are set forth in written documents that speak for themselves, and Independence denies any characterization thereof. Any remaining allegations are denied.

170. Denied.

171. The allegations in Paragraph 171 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

172. Denied.

173. Denied.

174. Denied. Independence expressly denies that Jefferson is entitled to a permanent injunction precluding Independence from imposing the challenged policies and failing to pay retroactive rates for past 340B payments. Independence expressly denies that its emergent inpatient admissions policy, readmission policy, site of care policy, and 340B payments constitute breaches of contract, improper unilateral amendments of the contract, or are otherwise unlawful or improper. To the contrary, the contract permitted Independence to adopt the policies and make the 340B payments at issue, and those policies and payments comply with all contractual requirements and applicable laws. Further, Independence denies that it has violated the Two Midnight Rule. To the contrary, Independence's practices and policies comply with all contractual requirements, as well as CMS requirements regarding Medicare Advantage inpatient admissions, including the Two Midnight Rule.

***

WHEREFORE, Independence respectfully requests that the Court enter judgment in favor of Independence and against Jefferson, and that Jefferson be denied any and all relief. Independence denies that Jefferson is entitled to judgment in Jefferson's favor, denies that

Jefferson is entitled to any monetary, declaratory, injunctive, or any other relief, and denies that Jefferson is entitled to any interest, costs, or attorneys' fees. Independence denies all liability to Jefferson.

## AFFIRMATIVE DEFENSES

Independence asserts the following defenses to Jefferson's claims without assuming the burden of proof as to any issue that otherwise would rest upon Jefferson.

1. Jefferson's claims fail to state a claim upon which relief can be granted.

2. Jefferson's claims are barred, in whole or in part, because Independence complied with the relevant contract and any amendment(s) thereto.

3. Jefferson's claims are barred, in whole or in part, because Jefferson failed to comply with one or more conditions precedent to recovery, including but not limited to the prerequisites described in Section 19.2 of the contract, any applicable procedures outlined in the Hospital Manual or other policies issued by Independence, and/or the appeals procedures required as to each patient claim for which Jefferson seeks relief.

4. Jefferson's claims are barred, in whole or in part, because Jefferson failed to exhaust required procedures and remedies before filing suit, including but not limited to the prerequisites described in Section 19.2 of the contract, any applicable procedures outlined in the Hospital Manual or other policies issued by Independence, and/or the appeals procedures required as to each patient claim for which Jefferson seeks relief.

5. Jefferson's claims are barred, in whole or in part, by illegality and/or public policy.

6. Jefferson's claims are barred, in whole or in part, by the statute of limitations.

7. Jefferson's claims are barred, in whole or in part, by unclean hands.

8. Jefferson's claims are barred, in whole or in part, by the doctrines of laches, estoppel, waiver, release, and/or any other applicable equitable doctrine.

9. Jefferson's claims are barred, in whole or in part, because any conduct engaged in by Independence has been reasonable, based on independent, legitimate business justifications, without any purpose or intent to injure Jefferson or others, and with the good faith belief in the lawfulness of its actions.

10. Jefferson's claims fail because Jefferson has not suffered any damages. Alternatively, Jefferson has suffered only damages caused by its own conduct.

11. Jefferson is barred from the relief requested because of its failure to mitigate injury and its failure to mitigate damages.

12. Jefferson's request for damages are barred, in whole or in part, because Jefferson's alleged damages are speculative, unforeseeable, and/or have not yet occurred and because it is impossible to ascertain and allocate such damages.

13. Jefferson's requests for declaratory, injunctive, and/or other equitable relief are barred, in whole or in part, because they are duplicative, can be remedied by monetary damages or another adequate remedy at law, and seek relief restricting conduct that is neither reasonably capable of determination in advance nor reasonably probable to recur in the future.

Independence has not knowingly or intentionally waived any applicable defenses and reserves the right to assert and rely on such other applicable defenses as may become available or apparent during discovery proceedings. Independence further reserves the right to amend its answer and/or defenses accordingly and/or to delete defenses that it determines during the course of subsequent discovery are not applicable.

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiffs Keystone Health Plan East, Inc., QCC Insurance Company, and AmeriHealth HMO (collectively, "Independence"), by and through their undersigned counsel, assert the following Counterclaim against Plaintiff and Counterclaim Defendant Thomas Jefferson University d/b/a Jefferson Health ("Jefferson"):

## NATURE OF THE ACTION

1. This is an action for breach of contract arising from Jefferson's failure to repay amounts owed to Independence under the parties' January 1, 2023 contractual amendment (the "Amendment") to their Managed Care Participating Hospital Agreement effective September 1, 2017 (the "Agreement").

2. The Amendment established a process for retroactively adjusting reimbursement rates, reconciling claims previously paid at earlier rates, and determining the resulting amounts owed between the parties. That process included an advance payment of $16 million from Independence to Jefferson, subject to a subsequent reconciliation and repayment obligation.

3. As a result of the reconciliation, and after crediting amounts owed to Jefferson attributable to self-funded claims, Jefferson still owes Independence approximately $3.2 million. Jefferson has failed to pay that amount in breach of the Amendment.

## PARTIES, JURISDICTION, AND VENUE

4. Independence Blue Cross, LLC is a licensee of Blue Cross and Blue Shield Association and is comprised of related insurance companies, Keystone Health Plan East, QCC Insurance Company, and AmeriHealth HMO, that collectively operate as Independence.

5. Jefferson is a university and medical center that owns and operates hospitals and healthcare cites in Pennsylvania.

6. This Counterclaim arises from the same contractual relationship, Agreement and Amendment, at issue in the Complaint.

7. The Agreement and Amendment cover both Medicare Advantage and commercial plans offered by Independence. Under the Agreement and Amendment, Jefferson provides medical services to members of Independence's Medicare Advantage and commercial plans, and Independence reimburses Jefferson for such covered services.

8. This Court therefore has supplemental jurisdiction over the Counterclaim pursuant to 28 U.S.C. § 1367(a).

9. Venue in the United States District Court for the Eastern District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391(b) because Jefferson resides in this District and because a substantial part of the events or omissions giving rise to the Counterclaim occurred in this District.

## FACTUAL ALLEGATIONS

### The Amendment and Its Reconciliation and Payment Requirements

10. Independence and Jefferson are parties to their Agreement governing reimbursement for covered healthcare services.

11. Effective January 1, 2023, the parties entered into the Amendment, which, in Section 3, provided for adjustments to the reimbursement rates under the Agreements and established procedures for applying those adjustments to previously paid claims.

12. Among other things, the Amendment required the parties to apply the adjusted reimbursement rates to claims for covered services furnished between August 1, 2022, and February 28, 2023, including claims involving members enrolled in fully insured plans (the "Fully Insured Claims").

13. Section 3(b)(i) of the Amendment required Independence to pay Jefferson $16 million as an advance based on the estimated additional reimbursement owed to Jefferson for Fully Insured Claims resulting from the adjusted rates.

14. The advance was subject to a subsequent reconciliation to determine the amount actually owed.

15. Pursuant to Section 3(b)(i), Independence paid Jefferson the $16 million advance on December 22, 2022.

16. Section 3(b)(ii) required Independence to reprocess the Fully Insured Claims using the adjusted rates set forth in Exhibit 1 to the Amendment.

17. The provision further required Independence to calculate the actual additional amount owed to or by Jefferson as a result of those adjustments, account for the specified incremental member cost-sharing liability, and provide Jefferson with claim-level detail supporting the calculation.

18. Critically, Section 3(b)(ii) expressly provides: "The resulting amount will be netted against the Sixteen Million Dollar ($16,000,000) advance payment, and the owing Party shall pay the other within thirty (30) days."

19. Thus, the Amendment expressly contemplated that, depending on the results of the reconciliation, either party could owe money to the other.

20. Where the $16 million advance exceeded the amount properly payable to Jefferson following reconciliation, Jefferson was contractually obligated to repay the excess amount to Independence.

The Reconciliation Established That Jefferson Owes Independence Money

21. In accordance with the reconciliation process established by the Amendment, Independence analyzed the claims subject to the retroactive rate adjustments and calculated the amounts attributable to the applicable reimbursement changes.

22. On or about November 2023, Independence completed the required reprocessing of the Fully Insured Claims.

23. On or about January 2024, Independence delivered to Jefferson its reconciliation calculation, together with the claim-level supporting detail required by Section 3(b)(ii).

24. Following that, in April 2024, Independence delivered a revised reconciliation calculation to Jefferson.

25. Jefferson disagreed with this calculation and, from April 2024 through June 2025, the parties made various adjustments to calculations and shared proposals in an attempt to come to agreement on the amount owed.

26. After accounting for the $16 million advance previously paid to Jefferson, and following certain adjustments Independence made in an attempt to come to agreement with Jefferson, Independence's June 2025 proposal included a reconciliation which established that Jefferson owed Independence over $9 million in connection with the Fully Insured Claims.

27. Separately, Section 3(c) of the Amendment addressed the reprocessing and payment of certain self-funded claims processed through Highmark's Oscar platform (the "Self-Funded Highmark Claims").

28. Independence's June 2025 reconciliation proposal identified more than $5.8 million in additional reimbursement to Jefferson attributable to the Self-Funded Highmark Claims.

29. Independence took into account that amount in determining the net balance claimed in this Counterclaim.

30. Accordingly, where Jefferson owes Independence more than $9 million for the Fully Insured Claims, and the Self-Funded Highmark Claims result in an additional reimbursement to Jefferson of approximately $5.8 million, the net amount of those claims still owed to Independence is approximately $3.2 million.

<u>Jefferson Failed to Pay the Amount Owed Under the Amendment</u>

31. Section 3(b)(ii) expressly required the party owing money following the reconciliation of the Fully Insured Claims to pay the other party within thirty days.

32. Independence delivered the contractually required reconciliation calculation and supporting claim-level detail to Jefferson in April 2024 and the parties made numerous proposals and counterproposals to one another through June 2025.

33. Jefferson's payment obligation has therefore matured.

34. Notwithstanding its contractual repayment obligation and the expiration of the applicable payment period, Jefferson has failed to repay the amount owed to Independence.

35. To date, Jefferson has not paid Independence the outstanding net balance required by the Amendment.

36. As a direct and foreseeable result of Jefferson's failure to comply with its contractual payment obligation, Independence has suffered monetary damages in an amount of approximately $3.2 million exclusive of applicable interest and recoverable costs.

## COUNT I — BREACH OF CONTRACT

## (Against Jefferson)

37. Independence incorporates by reference Paragraphs 1 through 36 as though fully set forth herein.

38. The Agreement, as amended by the January 1, 2023 Amendment, constitutes a valid and enforceable contract between Independence and Jefferson.

39. Under Section 3(b)(ii) of the Amendment, Jefferson was required to repay Independence amounts due following reconciliation of the Fully Insured Claims and application of the $16 million advance payment.

40. Independence performed its material obligations under the Amendment necessary to trigger Jefferson's repayment obligation, including making the $16 million advance payment and performing the required reconciliation, as set forth above.

41. The reconciliation established that the $16 million advance exceeded the additional reimbursement attributable to the Fully Insured Claims by approximately $9 million.

42. After crediting Jefferson approximately $5.8 million for additional reimbursement attributable to Self-Funded Highmark Claims, Independence is entitled to a net amount from Jefferson of approximately $3.2 million.

43. Jefferson materially breached the Amendment by failing to make the payment required by Section 3(b)(ii) within the prescribed contractual period.

44. All conditions precedent to the filing of this Counterclaim and Jefferson's obligation to perform under the contract have been performed, met, or waived.

45. As a direct and proximate result of Jefferson's breach, Independence has suffered damages in an amount of approximately $3.2 million, plus applicable prejudgment interest and recoverable costs.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant and Counterclaim Plaintiff Independence respectfully requests that this Court enter judgment in its favor and against Plaintiff and Counterclaim Defendant Jefferson, and award:

A. Compensatory damages in an amount of approximately $3.2 million;

B. Prejudgment interest at the applicable lawful rate, calculated from the date payment became due;

C. Fees and costs related to this action; and

D. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Defendant and Counterclaim Plaintiff Independence demands a trial by jury on all issues so triable raised by its Counterclaims.

[*Signature Page Follows*]

Dated: November 20, 2026

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Brian W. Shaffer*

Brian W. Shaffer (PA ID No. 78851)
Natalie M. Georges (PA ID No. 323893)
Diana P. Cortes (PA ID No. 204274)
Michael H. Carpenter, Jr. (PA ID No. 334938)
brian.shaffer@morganlewis.com
natalie.georges@morganlewis.com
diana.cortes@morganlewis.com
michael.carpenter@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
+1.215.963.5000
+1.215.963.5001

*Attorneys for Defendants Keystone Health Plan East, QCC Insurance Company, and AmeriHealth HMO*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on November 20, 2026 via the Court's ECF/CM system.

*/s/ Brian W. Shaffer*
Brian W. Shaffer